| | | |
|---|---|---|
| WILLIAM BEAMON, | ) | |
| Petitioner, | ) | |
| | ) | Case No. 1:17-cr-07 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| Respondent | ) | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE HIS CONVICTION

Comes now the United States of America, by its counsel, M. Scott Proctor, Acting United States Attorney for the Northern District of Indiana, through Nathaniel Whalen, Assistant United States Attorney, and requests this Court deny Petitioner William Beamon's Motion to Vacate his sentences pursuant to 28 U.S.C. § 2255. R. 580.[1]

### OFFENSE CONDUCT

Beamon was a member of the 2500 gang, which had Bloomington and Fort Wayne components. COP 37-38. The gang distributed guns and drugs (crack cocaine, ecstasy, Xanax, and marijuana). COP 37-38, 40-41, 51-52. Law enforcement conducted controlled buys of both guns and drugs from the 2500, including from Beamon. COP 37-38, 40-41, 51-52; PSR ¶¶ 15-16. The gang had

---

[1] Citations to the district court docket are designated as "R." Citations to Beamon's change of plea hearing transcript (R. 435) are designated as "COP," to his plea agreement (R. 272) as "Plea," and to his Presentence Report (R. 315) as "PSR."

ranks, and the more violent a 2500 member was, the higher he rose. COP 52-53. They also posted internet videos that glamorized violent attacks while taunting and threatening rivals and discussing drug deals. COP 38-39.

In November 2012, Beamon shot at a member of the Mafia—one of the 2500's main rivals. COP 39-40. Though Beamon did not kill the rival's girlfriend, he later said he would "kill her and finish the job." *Id.* Beamon claimed to shoot at another Mafia member, as well. COP 40.

"Scooby" Adams was the 2500's leader. COP 42. In February 2013, a member of the Mafia was killed, and the Mafia suspected Adams did it. COP 42-43. Mafia members retaliated by killing Adams. COP 42. That was a rallying event that began a "war" with "a long series of retaliatory violent incidents." COP 42-43, 49.

The 2500 planned a party for October 4, 2014, to commemorate Adams. COP 42. Just before the party, Beamon and others discovered online videos in which Mafia members, including JS, stood in front of a street sign in the heart of 2500 territory and mocked Adams' death. COP 43-44, 53. Beamon and his co-defendants went to the corner where the video was shot and saw JS and FB exiting a house. COP 43-44.

Beamon and his co-defendants sprayed gunfire, shooting through the house, its neighbor, and a nearby car. COP 43-44. Beamon had a 40-caliber gun because smaller caliber firearms "weren't getting it done" and were not

killing people. R. 360 at 56; R. 394 at 4. The gunfire hit 16-year-old SE in her finger. COP 44. Another bullet narrowly missed the head of a 17-year-old woman next door. COP 44. An informant saw the shooting. COP 44-45.

Beamon and Bolden fled to a nearby liquor store to set up a makeshift alibi. RCOP 44, 48; R. 394 at 5. They instead ran into a Mafia member there, pulled a gun on him, and beat him up. COP 44; R. 394 at 5.

Authorities later stopped Beamon and Bolden's car as they were fleeing and found a loaded handgun in the glove box in front of Beamon and a high-capacity magazine on the floor. COP 45. Twelve casings from the shooting matched the gun. COP 46.

In the aftermath of the shooting, the 2500 had conversations in which they agreed the shooting was the type of thing they had signed up for, but they wanted to make sure they had the same story, would stay loyal, and would shore up any weak links. COP 48. After all, they said, "some of them were built for this lifestyle and some of them were not." COP 51. They also discussed having Beamon's girlfriend claim possession of the gun Bolden had. COP 45, 51; R. 394 at 6. They later tried to get the gun back and, at the police station, Beamon had a verbal altercation with an opposition gang member. COP 52. Members of the 2500—including Burrus and Beamon—posted a rap video roughly a month later with the lyrics "Fifty Shots and Now We Hot," in reference to the shooting. COP 39; R. 394 at 7.

Beamon was arrested and said during a post-*Miranda* interview it was "us versus them," meaning the 2500 versus the Mafia. COP 53.

**RELEVANT PROCEDURAL HISTORY**

A grand jury indictment alleged Defendants and others committed violent crimes in aid of racketeering ("VICAR"), in violation of 18 U.S.C. § 1959, by: conspiring to commit murder and assault with a dangerous weapon (Count 1); attempting to murder FB, JS, and SE; (Counts, 3, 5, and 7); attempting to assault FB and JS with a dangerous weapon (Counts 9 and 11); and assaulting SE with a dangerous weapon (Count 13). R. 1 at 4-16. Each count was followed by an even numbered count alleging the discharge of a firearm during that crime of violence, in violation of 18 U.S.C. § 924(c). R. 1 at 5-17. Section 924(c) prohibits (as is relevant here) the knowing discharge of a firearm "during and in relation to a crime of violence for which" the Defendant may be prosecuted in a court of the United States. 18 U.S.C. § 924(c). A "crime of violence" means, in relevant part, a felony offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(1)(3)(A). Attorney Stanley Campbell was appointed to represent Beamon. R. 23, 24.

Beamon entered into a written agreement to plead guilty to Counts 9 through 14 of the indictment, which included the VICAR offenses of attempted assault and assault and the corresponding § 924(c) charges. Plea ¶ 8. Beamon

agreed he read the indictment, discussed it with counsel, and understood the charges against him. Plea ¶¶ 2, 3. He told counsel "the facts and surrounding circumstances" of the crime and believed and felt Campbell was "fully informed as to all such matters." Plea ¶ 3. Beamon believed and felt counsel "has done all that anyone could do to counsel and assist [him] and that [he] now underst[ood] the proceedings" against him. Plea ¶ 11.

Beamon understood this Court would "determine all matters, whether factual or legal, relevant to" the Sentencing Guidelines, but that "no one can predict the precise sentence that will be imposed." *Id.* ¶¶ 7, 8(d). Finally, he said he was pleading "guilty freely and voluntarily and of [his] own accord, and no promises have been made to [him] other than those contained in this agreement, nor [had he] been threatened in any way by anyone to cause [him] to plead guilty in accordance with this agreement." Plea ¶ 12.

During his change of plea with the magistrate judge, Beamon swore (as discussed in more detail below) that he discussed the Guidelines with counsel, but counsel did not make any promises or predictions about his sentence and neither Beamon nor counsel knew what his sentences would be. COP 21-23. Beamon understood the court would calculate the Guidelines and could impose a sentence above or below the Guideline range and up to statutory maximum. COP 21-23, 29-30.

Beamon swore that he understood the assault and attempted assault

counts each had a § 924(c) charge connected to them. COP 12-13. He also understood that attempted assault required proof that he committed attempted battery with a deadly weapon or attempted aggravated battery under Indiana law. COP 14-17. He swore he understood that Count 13 required the Government to prove he committed assault, not attempted assault, and that required showing that he "knowingly or intentionally did touch another person in a rude, insolent or angry manner with a deadly weapon." COP 17-18. He understood that Count 14 was a § 924(c) charge based on the "assault against SE." COP 18. Beamon agreed that he assaulted SE, "with a dangerous weapon"—namely a handgun. COP 33. He pointed the firearm at SE, fired it, and she was struck by one or more bullets. COP 33. He acted with "intent to cause serious injury to SE." COP 34.

The magistrate judge recommended this Court accept the plea, which it did without objection. R. 285-87, 289.

The draft Presentence Report applied a cross-reference for the VICAR offenses to the attempted murder Guideline (§ 2A2.1) rather than assault (§§ 2A2.2 or 2A2.3). R. 348 at 1-2 (noting draft PSR conclusions). Counsel objected to the cross-reference and instead suggested the Court should apply the assault Guidelines. R. 332 at 1; R. 348. Counsel argued that the Second Circuit's opinion in *United States v. McCall*, 915 F.2d 811 (2d Cir. 1990) supported his position. R. 348 at 6-7.

This Court rejected that position, finding the cross-reference applied. R. 394 at 10-21. The Court went through the Guideline analysis and recognized that "[o]ne might surmise … albeit mistakenly, that the court should apply the offense level corresponding most closely with attempted assault or assault with a dangerous weapon," but found instead Seventh Circuit caselaw required the cross-reference. R. 394 at 10-13. The Court acknowledged *McCall* favors "the charged offense rather than the real offense" approach, but found it bound by Seventh Circuit precedent. *Id.*

Beamon then moved to withdraw his plea, arguing he believed based on conversations with counsel that the §§ 2A2.2 or 2A2.3 Guidelines would apply rather than the cross-reference. R. 410, 411. The Government noted in its response that it never promised a lower sentencing guideline calculation during plea negotiations. R. 428 at 22-23.

This Court denied Beamon's motion (which was mirrored by similar motions by his co-conspirators), noting each Defendant's statements during the "plea colloquy are presumed to be true," so "the court is 'generally justified in discrediting the proffered reasons for a motion to withdraw'" that contradicted those statements, and the Court should instead hold "the defendant to his admissions." R. 437 at 1-2 (collecting cases). This Court found each plea agreement was "clear as day" that no one could predict the sentence, and the Court also ensured during the colloquies that each Defendant understood it

might arrive at a sentence they "didn't expect" and "could impose any sentence within the statutory maximum." R. 437 at 2-7. These colloquies adequately "stressed the uncertainty of each defendant's sentence." R. 437 at 7. Each defendant also said he was "satisfied with his counsel's performance," "agreed with the factual basis," and "confirmed there were no other promises or predictions regarding his guilty plea and that he wasn't threatened or forced to plead guilty." R. 437 at 2-3, 5-6.

The cross-reference, enhancements, and reduction for acceptance of responsibility produced a Guidelines offense level of 35. PSR ¶ 67. The PSR noted Beamon's criminal history included a gun conviction when he was 19 years old, trespass at 20, and another gun conviction at 21. PSR ¶¶ 72-80. That Category III criminal history produced a recommended Guidelines range of 210-262 months' imprisonment for the non-924(c) counts. PSR ¶¶ 111-12.

Counsel filed a sentencing memorandum discussing Beamon's tough upbringing, early involvement with the 2500, and good conduct while incarcerated. R. 448 at 2-3. The PSR extensively discussed Beamon's personal history. PSR ¶¶ 91-95. It recommended Beamon's childhood was a mitigating factor. PSR ¶ 128.

During the sentencing hearing, counsel noted Beamon had written a letter telling the Court he was re-evaluating his life. Sent. 30-31. Counsel again emphasized Beamon's childhood and how he normalized it despite its tough

nature. Sent. 32-33. Counsel also noted Beamon's lack of any lengthy criminal sentence. Sent. 33. During his allocution, Beamon argued that he "never even got a chance to live my life. I've been gone since maybe 21." Sent. 37.

In handing down its sentence, this Court noted the dangerousness of Beamon's actions during the shooting. Sent. 40-43. It noted Beamon's history suggested that "absent today's sentence you could or would recidivate and return to, not just violence but violence with firearms." Sent. 41. It also noted that Beamon's criminal history was "steeped in violent firearms" and much of it was "uncaptured by [his] convictions to date." Sent. 41-42, 45-46. There was a need to protect the public from his "persistent criminal conduct" that involved violence. Sent. 43-44. The Court also noted Beamon was 28 and had numerous firearms offenses already. Sent. 44. That involvement with firearms statistically made him more likely to recidivate than someone who committed other types of crimes. Sent. 44-45.

The Court identified Beamon's "unfortunate childhood" but his strong family support. Sent. 46-48. However, it found Beamon's suggestion that his prior conviction was a "wake-up call" was probably not true given the offense conduct here. Sent. 49-50.

The Court imposed a 240-month term on the assault count, to run concurrently with 36-month terms on the attempted assault counts, and then 120-month terms on the § 924(c) convictions that would run concurrently to

each other but consecutively to the 240-month term, resulting in a total term of 360 months' imprisonment. Sent. 50-51; *see also* R. 469 (court sentencing memo).

Beamon and his co-Defendants appealed, arguing that they could not be sentenced to concurrent terms on the § 924(c) counts and their failure to understand that resulted in unknowing pleas that should be vacated. They also challenged the cross-reference to the attempted murder Guideline. The Seventh Circuit agreed that the § 924(c) counts could not run concurrently and remanded for this Court to "merge the § 924 sentences into a single conviction." *United States v. Bolden*, 2022 U.S. App. LEXIS 31485 (7th Cir. 2022). However, the Court also found Defendant's pleas were knowing and voluntary, and the appeal waiver in their plea agreement prohibited them from challenging the cross-reference. *Id.*

On remand, this Court merged the § 924(c) counts and entered judgment on Count 10, which related to the attempted assault. R. 524. It also noted the other § 924(c) counts, "12 and 14 are merged with count 10." R. 524 at 1. Beamon appealed, but the Seventh Circuit summarily affirmed. R. 551.

## **ARGUMENT**

Beamon filed a timely motion to vacate his sentences pursuant to 28 U.S.C. § 2255. R. 580. He argues (1) counsel was ineffective because he "informed [Beamon] that he would be sentenced under the assault guidelines,

and he was punished under the attempted murder provision" (R. 580 at 9-11, 19-21) (capitalization omitted); (2) VICAR attempted assault is not a qualifying predicate "crime of violence" under § 924(c) and counsel was ineffective for not arguing the point (R. 580 at 12-19); and (3) counsel was ineffective for not arguing for a downward variance based on Beamon's age at the time of the crimes (R. 580 at 22-25).

## I.   Counsel was not ineffective in informing Beamon which Guideline he believed would be used at sentencing

To prevail on an ineffective assistance of counsel claim, Beamon must show both that (1) counsel's performance was deficient, and (2) that deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Surmounting *Strickland*'s high bar is never an easy task" since *Strickland*'s standard "must be applied with scrupulous care." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quotation omitted). This Court's "scrutiny of counsel's performance must be highly deferential" and should "eliminate the distorting effects of hindsight … and [ ] evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

On the performance prong, this Court applies a "strong presumption that counsel's representation was within the wide range of reasonable professional assistance." *Harrington*, 562 U.S. at 104 (quotation omitted). It is not enough that counsel "deviated from best practices or most common custom"; rather,

counsel's performance is deficient only if it "amounted to incompetence under prevailing professional norms." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotation omitted). An attorney's representation "need not be perfect, indeed not even very good, to be constitutionally adequate." *Delatorre v. United States*, 847 F.3d 837, 845 (7th Cir. 2017) (internal quotation omitted). Moreover, a "strategic decision, even if clearly wrong in retrospect, cannot support a claim that counsel's conduct was deficient." *Spiller v. United States*, 855 F.3d 751, 756 (7th Cir. 2017) (internal quotation omitted).

On the prejudice prong, Beamon must show a reasonable probability that counsel's ineffectiveness affected the proceeding's outcome. *Strickland*, 466 U.S. at 694. "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington*, 562 U.S. at 104. He must show counsel's errors rendered the proceedings "fundamentally unfair or unreliable." *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

Beamon's claims attacking his plea require a showing on the prejudice prong that he would have proceeded to trial but for counsel's ineffectiveness. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). A "mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice," he instead must "go further and present objective evidence that a

reasonable probability exists that he would have taken that step." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005); *see also Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (court should not accept "self-serving" statements alone). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but should "instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Lee v. United States*, 582 U.S. 357, 369 (2017). Though an ineffective assistance of counsel claim has two requirements, this Court can skip *Strickland*'s first prong and decide the motion on prejudice alone. 466 U.S. at 697.

Here, Beamon does not allege he would have gone to trial had counsel informed him that his advisory Guidelines range would be calculated using the attempted murder cross-reference. He instead only argues that this Court should "vacat[e] the sentence and resentenc[e] him under the guidelines to which he originally bargained for." R. 580 at 11. But the Sixth Amendment requires a Defendant to show that he would have gone to trial when he alleges counsel's constitutionally deficient advice caused him to enter into a plea. *See, e.g., Hill,* 474 U.S. at 58-59; *Christopher v. United States*, --- F.4th ----, 2025 U.S. App. LEXIS 20983, \**12-13 (7th Cir. Aug. 18, 2025). Since Beamon has not alleged as much, let alone presented any evidence, his claim should be denied on that ground alone.

Beamon suggests the *Hill* standard does not apply and the Sixth Amendment no longer requires a showing that the Defendant would have gone to trial but for counsel's ineffectiveness, citing *Missouri v. Frye*, 566 U.S. 134, 141-42 (2012). However, *Frye* involves a challenge to counsel's effectiveness relating to "other potential pleas and offers." *Id.* at 142. Beamon does not allege there was another plea offer here. Indeed, there is no evidence the Government ever offered him a plea to a sentence that would be imposed under the assault Guideline. When "no plea offer is made," Defendant cannot claim counsel was ineffective vis-a-vis that hypothetical offer. *Lafler v. Cooper*, 566 U.S. 156, 168 (2012) (defendants "have no right to be offered a plea … nor a federal right that the judge accept it"); *see also Martin v. United States*, 789 F.3d 703, 706-07 (7th Cir. 2015) (ineffectiveness in relation to plea agreement requires some showing the government offered a plea).

Regardless, Beamon also cannot show counsel's performance was deficient. The contemporaneous pleadings, including the motion to withdraw the plea, show that counsel investigated the issue and did not believe a cross-reference would apply. While the failure to identify the cross-reference might have been a "mistake," counsel was not constitutionally ineffective since that legal error was not a "conspicuous failing[ ]." *Galbraith v. United States*, 313 F.3d 1001, 1008 n.4 (7th Cir. 2002). Rather, determining the cross-reference's application was not a simple endeavor. While applying it, this Court noted that

the Guidelines' plain language would lead "[o]ne to surmise then … that the court should apply the offense level corresponding most closely with attempted assault or assault with a dangerous weapon—the underlying charges in the indictment." R. 394 at 11. Indeed, as Beamon knows because he relied on it in the Seventh Circuit and before this Court, there is a Second Circuit case that reaches a contrary result, suggesting the cross-reference's application is not clear and obvious. R. 394 at 12 (citing *United States v. McCall*, 915 F.2d 811 (2d Cir. 1990).

Though Seventh Circuit caselaw on a similarly worded but different Guideline led this Court to apply the cross-reference, R. 394 at 12, this was not such an obvious issue that counsel's Guidelines analysis "amounted to incompetence under prevailing professional norms." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011) (internal quotation omitted). Counsel got it wrong, but if their motions are to be believed, so did counsel for all three other co-Defendants. Beamon has failed to show deficient performance.

Moreover, the very basis for Beamon's § 2255 argument—he "specifically asked" Campbell "what he would be sentenced under, meaning what guidelines, if he admitted to the offenses that relied upon the state assault convictions" and counsel "responded the Court would use the Guideline attached to the offenses of conviction"—is undermined by the plea colloquy. R. 580 at 10-11. Beamon swore counsel did not make "any promise or predication

to [him] about the sentences [he] might receive." COP 23. In fact, Beamon understood that "no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum." COP 26. To the extent the basis for Beamon's argument is that counsel was ineffective because he told Beamon that he would be sentenced under the assault Guidelines, that contradicts Beamon's under-oath statements. As this Court noted while denying Beamon's motion to withdraw the plea, as well as denying co-Defendant Bolden's § 2255 motion, the Court is "generally justified in discrediting the proffered reason for the motion … and holding the defendant to his admissions at the plea colloquy." R. 563 at 4 (quoting *United States v. Patterson*, 576 F.3d 431, 437 (7th Cir. 2009) and collecting other cases); *see also* R. 437 at 1-2.

Finally, even if counsel's performance was deficient, this Court's "plea colloquy can 'ameliorate the adverse impact of his counsel's misinformation.'" *Sanabria v. United States*, 2025 U.S. Dist. LEXIS 142722, **11-12 (N.D. Ind. July 24, 2025) (Leicthy, J.) (quoting *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010)). During Beamon's plea colloquy, he confirmed under oath that he discussed "how the Sentencing Commission Guidelines apply in [his] case." COP 21. He understood the Court "will not be able to determine the guideline" range until after the PSR was completed, and even after the Court determined what the Guidelines were, this Court "nevertheless has the

authority in some circumstances to impose a sentence that is more severe or less severe than a sentence called or by the Guidelines." COP 22. He swore that he did not "know what any of [his] sentences will be." COP 23. Even if the sentences might "turn out to be more severe than [Beamon] expected," he would "still be bound by [his] guilty pleas" and the agreement. COP 22-23.

Regardless of what anyone said prior to the colloquy, Beamon swore he understood "that [he] might still receive sentences up to the maximum sentences by law" and if the Court "imposes a more severe sentence or sentences, then [he would] not be permitted to withdraw" his guilty plea. COP 29-30. The only way to believe Defendant's implied assertion—that counsel's analysis of the Guidelines was the key to his pleading guilty—is to disbelieve his sworn assertions during the "change of plea hearing, which are presumed truthful." *Sanabria*, 2025 U.S. Dist. LEXIS 142722, **11-12 (N.D. 2025) (quoting *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)). Since this Court should not do so, it should deny Beamon's claim.

## II.     Counsel was not ineffective vis-à-vis the § 924(c) count

Beamon next argues that counsel was ineffective for not researching and determining that attempted assault under Indiana law was not a crime of violence by the time of the plea and therefore could not support a § 924(c) conviction. However, this Court need not engage in a categorical analysis of attempted assault. Beamon pled guilty to three § 924(c) counts, one of which

was based on a completed assault (rather than an attempt), which remains valid. Accordingly, Beamon's claim fails.

Beamon was charged with three VICAR crimes in violation of 18 U.S.C. § 1959(a)(3)[2]: attempting to assault FB and JS with a dangerous weapon (Counts 9 and 11) and assaulting SE with a dangerous weapon (Count 13). R. 1 at 4-16. The assault was in violation of Indiana Code §§ 35-32-2-1(b)(1) and (f)(2), 35-42-2-1.5, and 35-41-2-4. R. 1 at 16. Each allegation was followed by an even numbered count alleging the discharge of a firearm during that crime of violence, in violation of 18 U.S.C. § 924(c). R. 1 at 5-17.

While Beamon challenges Count 10, he wisely does not challenge the validity of Count 14, to which he also plead guilty, was adjudged guilty, and sentenced to the same term of imprisonment as Count 10.[3] That conviction and

---

[2] Defendant argues that assault and attempted assault do not qualify under 18 U.S.C. § 1961 (Mot. 13), but that is not the crime with which he was charged.

[3] Even if he had not waived the argument by failing to raise it in his § 2255 motion, any such challenge would fail since assault under Indiana law remains a valid crime of violence. To determine whether a VICAR crime categorically involves the use, attempted use, or threatened use of physical force, the Court would look at the VICAR charged (in this case, § 1959(a)(3), assault with a dangerous weapon) and then the underlying state crime that supports that VICAR. *See, e.g., Nicholson v. United States*, 78 F.4th 870, 879-80 (6th Cir. 2023); *Manners v. United States*, 947 F.3d 377, 379-80 (6th Cir. 2020); *United States v. Thomas*, 87 F.4th 267, 272-75 (4th Cir. 2023); *United States v. Laurent*, 33 F.4th 63, 92 (2d Cir. 2022). In this case, the assault was in violation of Indiana's battery by means of a deadly weapon statute—Ind. Code § 35-42-2-1(b)(1) and (f)(2)—which requires showing the defendant "knowingly or intentionally did touch another person in a rude, insolent or angry manner with a deadly weapon." COP at 17. That battery statute qualifies as a "crime of violence." *United States v. Taylor*, 630 F.3d 629, 634-35 (7th Cir. 2010); *United States v. Boswell*, 711 Fed. Appx. 803, 804 (7th Cir. 2018) (unpublished). It also requires a knowing or intentional *mens rea* and therefore does not implicate the recklessness concerns in *Borden, v. United States*, which held that "only purposeful or knowing conduct satisfies the [element] clause's demand for the use of force 'against the person of another'" and recklessness was not sufficient. 141 S. Ct. 1817, 1822-23 (2021); *see also United States v. Robinson*, 29 F.4th 370, 375 (7th Cir. 2022) (discussing *Borden*'s holding).

sentence, though merged with the conviction and sentence on Count 10, remains valid. So, even if the conviction on Count 10 were vacated, it would not affect Beamon's overall sentence.

Accordingly, Beamon's ineffective assistance of counsel claim fails. First, Campbell's performance in relation to the § 924(c) counts as a whole was not constitutionally deficient. In evaluating performance, this Court should look at "counsel's overall performance rather than find a single error." *Marling v. Littlejohn*, 964 F.3d 667, 669 (7th Cir. 2020). Even if counsel was deficient in researching the validity of attempted assault as a crime of violence, Beamon has not alleged that counsel was ineffective in relation to researching and advising him about assault's status as a crime of violence. Counsel, in fact, reasonably determined it did qualify and advised Beamon to plead guilty to that count. *See, e.g., Taylor*, 630 F.3d at 634-35. Counsel's performance in advising Beamon to plead guilty to violating § 924(c) was therefore not constitutionally deficient.

But even assuming Beamon is correct that Count 10 is problematic, there is no prejudice since there is no practical difference between him being sentenced on Count 10 or Count 14. There is no dispute Beamon was guilty of Count 14 and this Court imposed the same sentence on the two counts. Accordingly, Count 14 is still a valid source of Beamon's conviction and sentence and Beamon has not alleged any prejudice from being convicted of

Count 10 (§ 924(c) based on attempted assault) as compared to Count 14 (§ 924(c) based on assault). Counsel's performance as a whole is not deficient and there is no reasonable probability of a different sentence if Beamon had pled guilty to just Count 14, instead of Counts 10, 12, and 14.

To the extent Beamon is challenging his conviction on Count 10 as jurisdictional or through a claim of actual innocence (rather than ineffective assistance of counsel), those claims are both barred by his appeal waiver and not supported by the law. *Oliver v. United States*, 951 F.3d 841 (7th Cir. 2020) (dismissing challenge to § 924(c) based on identical, Northern District of Indiana appeal waiver). A challenge to the validity of a § 924(c) conviction is not, as Beamon asserts, a challenge to the court's jurisdiction. *Id.* at 845-47; *United States v. Mitchell*, 657 Fed. Appx. 605, 606 (7th Cir. 2016) (unpublished); *United States v. Wheeler*, 857 F.3d 742, 744-45 (7th Cir. 2017); *Davila v. United States*, 843 F.3d 729, 731-32 (7th Cir. 2016). Nor does his claim about attempted assault's qualifying as a "crime of violence" constitute a claim of "actual innocence." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998) ("actual[ ] innocence" requires showing of "factual innocence, not mere legal insufficiency"). He is not factually innocent of discharging a firearm at someone in a way that uses force capable of causing bodily injury, and therefore "force" as § 924(c) uses the phrase. *United States v. Love,* 7 F.4th 674, 680(7th

Cir. 2021) (quoting *Douglas v. United States*, 858 F.3d 1069, 1071 (7th Cir. 2017)).

But even if Beamon is correct and the validity of Count 10 is ripe for this Court's review, he cannot show any prejudice or explain why this Court should vacate his sentence. In situations where vacating a conviction and its accompanying sentence would not "reduce the time that [the petitioner] must serve in prison," this Court should deny the § 2255 motion. *Ruiz v. United States*, 990 F.3d 1025, 1031-34 (7th Cir. 2021). This case presents a more compelling example than *Ruiz* of harmless error since, there, the defendant's challenged conviction actually increased his sentence, albeit in a practically miniscule way since the § 924(c) conviction added 45 years' imprisonment on top of seven life sentences. *Cf. Duka v. United States*, 27 F.4th 189, 194-96 (3d Cir. 2022) (refusing to consider validity of § 924(c) conviction where unchallenged sentence would remain the same); *Amaya v. United States*, 71 F.4th 487, 489-90 (6th Cir. 2023) (same). Here, if Beamon were right that Count 10 should be vacated, that count might go away but it would be replaced by the unchallenged and merged conviction and sentence on Count 14.

Even if Count 14 had been completely vacated rather than merged, this Court would still have the power to reinstate Count 14 and adjudge Beamon guilty of violating 924(c). *See, e.g., Rutledge v. United States*, 230 F.3d 1041, 1047-49 (7th Cir. 2000) (collecting cases allowing courts to reinstate valid

conviction that "does not suffer from any procedural or substantive defect");
*Lanier v. United States*, 220 F.3d 833, 840-42 (7th Cir. 2000).

Though the merged § 924(c) sentences are not concurrent, the "concurrent sentence" doctrine provides another road map for denying the motion here since the conviction on Count 10 is "an equal or longer sentence" as the "unchallenged … conviction" on Count 14, and there are "no adverse collateral consequences to the prisoner by declining to review the challenged conviction." *Ruiz*, 990 F.3d at 1033 (citing *Hill v. Werlinger*, 695 F.3d 644, 649 n.1 (7th Cir. 2012)); *see also United States v. Said*, 26 F.4th 653, 661-64 (4th Cir. 2022); *Granda v. United States*, 990 F.3d 1271, 1288-92 (11th Cir. 2021) (both affirming § 924(c) convictions that might have been based in part on invalid predicate crime of violence, but also had valid predicate as well).

In short, vacating Count 10 would not give Beamon any relief since his conviction and sentence on Count 14 would nevertheless stand. Accordingly, this Court should deny the motion or, at most, amend the judgment to reflect that he stands convicted of Count 14 rather than Count 10.

### III.   Counsel was not ineffective at sentencing

Finally, Beamon argues counsel was ineffective by failing to argue at sentencing that Beamon was under 24 years old at the time of the crime and this Court should therefore have granted a variance.

A defendant is entitled to effective counsel at sentencing. *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010). To prove counsel's performance at sentencing violated the Sixth Amendment, Beamon must show both that counsel's performance was constitutionally deficient and "but for counsel's errors, there is a reasonable probability that he would have received a difference sentence." *Id.*

Here, counsel's performance was not deficient. There was no reason to believe that counsel had to reiterate Defendant's youth for this Court. This Court noted specifically how old Defendant was when sentencing him and therefore understood his relative youth. Moreover, it was reasonable to forgo this argument given Defendant's lengthy criminal history at his young age. By highlighting how young Defendant was, it would have reinforced that he had already committed numerous crimes, many involving guns, by that young age and therefore was a serious risk.

Nor does Defendant present any specific reason that his age would have made for a more compelling case for mitigation than any other defendant. *See, e.g.,* U.S.S.G. § 5H1.1 (2018 ed.) (policy statement suggesting departure, now termed variance, might be appropriate if considerations like "age … are present to an usual degree and distinguish the case form the typical cases covered by the guidelines"). Accordingly, Beamon has not shown a reasonable probability he would have received a difference sentence had counsel pointed

out that Beamon was under the age of 24 at the time of the crime. *Griffin*, 622 F.3d at 844.

This Court understood the relative age of the all the Defendants at the time—indeed, their age was regularly exhibited during their rap videos and confessions—and there is no reasonable probability the Court would have imposed a difference sentence had counsel made explicit that Beamon was under 24 at the time of the shooting.

Since none of Petitioner's allegations include detailed and specific facts that, if proven, would entitle him to relief, this Court should deny his motion without a hearing. R. 563 at 2 (collecting cases).

## CONCLUSION

This Court should deny Beamon's Motion to Vacate without a hearing.

M. SCOTT PROCTOR
ACTING UNITED STATES ATTORNEY

BY:     */s/ Nathaniel L. Whalen*
Nathaniel L. Whalen
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
Tel: (219) 937-5500
Fax: (219) 852-2770
E-mail: Nathaniel.Whalen@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I certify that all participants in the case who are registered CM/ECF users received service by the CM/ECF system.

I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants:

William D. Beamon
16940-027
Hazelton FCI
PO Box 5000
Bruceton Mills, WV 26525

*/s/ Alana K. Yurczyk*
Alana K. Yurczyk
Supervisory Legal Assistant

OFFICE OF THE U.S. ATTORNEY
Northern District of Indiana
5400 Federal Plaza
Suite 1500
Hammond, IN 46320